RECEIVED
DEC 2 9 2005

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| BRENDA FAYE MELANÇON o/b/o<br>BOBBIE J. MELANÇON, JR. | CIVIL ACTION NO. 04-1758 |
| VS. | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED**.

### *Background*

On October 22, 1996, the Commissioner granted the application for SSI benefits filed by Brenda Faye Melançon ("Melançon") on behalf of her child, Bobbie J. Melançon, Jr. ("Bobbie").[1] The disability examiner determined that Bobbie, who was born on April 25, 1996, was disabled at birth due to congenital glaucoma which met the requirements of Title 20 C.F.R. Pt. 404, Subpt. P, App. 1, Subpart P, § 102.02B3. Melançon's case was reviewed in 2002 and the SSA concluded that Bobbie was no longer disabled and terminated benefits. Melançon requested an administrative hearing, and on February 25, 2004, the ALJ issued a decision finding that Bobbie was not disabled.[2] Melançon appealed the decision to the Appeals Council, which denied review, making the ALJ's decision the final decision of the Commissioner from which Melançon now appeals.

---

[1] Tr. 38.

[2] Tr. 14-20.

### *Standard of Review*

This court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id.; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Id.

### *Childhood Disability Benefits*

An individual under age 18 may be found disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i).

The regulations provide a three-step sequential evaluation process for determining whether a child's impairments result in "marked and severe limitations." First, if the child is engaging in "substantial gainful activity," the child will be found not disabled regardless of medical condition or age, education, or work experience. 20 C.F.R. §416.924(b). Second, the child must have a severe impairment or impairments. If the child suffers from a slight

abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations, the child will be considered to have no severe impairment, and therefore to be not disabled. Title 20 C.F.R. §416.924(c). Third, the child will be considered disabled if his or her impairment(s) meet, medically equal, or functionally equal in severity a listed impairment in Appendix 1 of Subpart P of Part 404 of the chapter. If a child's impairments do not meet or medically equal a listed impairment, the Commissioner will assess all functional limitations caused by the child's impairments to determine whether the functional limitations are disabling. 20 C.F.R. §§ 416.926a (functional equivalence for children). *See, e.g.*, Luckerson v. Apfel, 2000 WL 1222125 (N.D. Ill. Aug. 22, 2000).

### *ALJ's Findings*

The ALJ found that Bobbie's congenital glaucoma was a severe impairment.[3] The ALJ concluded, however, that Bobbie had medically improved and no longer met or functionally equaled any impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Subpart P.

### *Assignment of Errors*

Melançon, who is proceeding *pro se*, does not specify errors, however she does allege in the Complaint that the ALJ's findings are not supported by substantial evidence.[4]

---

[3] Tr. 17.

[4] Rec. Doc. 1.

4

*Findings and Conclusion*

## *I. Administrative Record*

On October 9, 1996, when Bobbie was not quite six months old, his treating physician Dr. Robert A. Gordon, a pediatric ophthalmologist at Tulane University Hospital, reported as follows:

> Shortly after birth, this baby developed congenital glaucoma of both eyes. He has been managed medically with Diamox and eye drops and has also undergone several surgeries to his eyes to lower his intraocular pressure. The pressure has improved, although he will probably require more surgeries in the future. In fact, many children with congenital glaucoma require numerous eye surgeries and medications throughout their childhood years and even into adulthood.
>
> As for vision, he is probably worse than 20/200 in each eye at this time, which would qualify for a legal blindness status.[5]

On October 22, 1996, Bobbie was found to be disabled by Disability Determination Services ("DDS").[6] Bobbie continued treatment with Dr. Gordon, including examinations under anesthesia ("EAU").[7] On June 26, 1997, Dr. Gordon inserted an Ahmed Glaucoma Valve in Bobbie's right eye to control intraocular pressure.[8] On September 27, 2001, Bobbie underwent muscle surgery for strabismus[9] and valve revision on the right eye.[10] Bobbie was prescribed glasses, however, he did not wear them frequently.[11]

---

[5] Tr. 181.

[6] Tr. 38.

[7] Tr. 170, 172, 176, 178, 180.

[8] Tr. 180. *See* http://www.ahmedvalve.com/

[9] "Strabismus, more commonly known as crossed-eyes, is a vision condition in which a person can not align both eyes simultaneously under normal conditions." *See* http://www.strabismus.org/.

[10] Tr. 171.

[11] Tr. 179, 180.

On October 29, 2003, when Bobbie was seven years old, Dr. Gordon reported as follows:

> My last examination, on September 3, 2003, revealed visual acuities of 20/60 in his right eye and 20/50 in his left eye with his glasses. Without his glasses, he could only see 20/400 in his right and 20/80 in his left. He is to wear his glasses on a full-time basis.
>
> He is scheduled for another examination under anesthesia in the near future. In the meantime, he is to wear his glasses on a full-time basis for most activities, although he should be able to read reasonably well without his glasses, as long as he is allowed to hold the reading material close to his eyes.
>
> As you know Bobbie will require lifelong monitoring of his serious visual problem, and may well require additional surgeries in the future.
>
> He will also likely require continued eyedrops to control his eye pressures, as he does at this time. Currently he takes Xalatan eyedrops at bedtime in each eye once a day.[12]

At the administrative hearing on November 12, 2003, Bobbie testified that he was in the first grade, he makes "A's" in special education courses, he has friends, plays on the slides and swings, participates in physical education, and helps his mother with household chores.[13] Melançon testified that Bobbie is active and gets into fights, and his vision problems are corrected with glasses.[14]

## *II. Appendix I Impairment*

The ALJ concluded that Bobbie's condition no longer meets the requirements of Title 20 C.F.R. Pt. 404, Subpt. P, App. 1, Subpart P, § 102.02B. Section 102.02B states as follows:

**102.02 Impairments of visual acuity.**

A. Remaining vision in the better eye after best correction is 20/200 or less; or

---

[12] Tr. 188.

[13] Tr. 32.

[14] Tr. 34-35.

# 6

B. For children below 3 years of age at time of adjudication:
1. Absence of accommodative reflex (see 102.00A for exclusion of children under 6 months of age); or
2. Retrolental fibroplasia with macular scarring or neovascularization; or
3. Bilateral congenital cataracts with visualization of retinal red reflex only or when associated with other ocular pathology.

In October, 1996, at the age of six months, Bobbie was found to meet the requirements of § 102.02B3.[15] When his case before the ALJ in 2004, Bobbie was seven years old, and therefore, § 102.02A, requiring vision of 20/200 or less, was applicable to his case because he was older than three years of age. As discussed above, on October 29, 2003, Dr. Gordon noted that Bobbie had visual acuity of 20/60 in the right eye and 20/50 in the left eye with glasses.[16] Accordingly, Bobbie did not meet the requirements of § 102.02A.

Once it is determined that an impairment does not meet the requirements of a listed impairment, the impairment is evaluated to determine whether it functionally equals an Appendix 1 listing. A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in marked limitations in two of the following six domains, or an extreme limitation in one domain:

    (i)     Acquiring and using information;
    (ii)    Attending and completing tasks;
    (iii)   Interacting and relating with others;
    (iv)   Moving about and manipulating objects;
    (v)    Caring for yourself; and,
    (vi)   Health and physical well-being.

Title 20 C.F.R. § 416.926a(b)(1)(i-vi).

---

[15] Tr. 38.

[16] Tr. 188.

A "marked" limitation in a domain means an impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. §416.926a(e)(2)(i).[17] A "marked" limitation is "more than moderate" but "less than extreme." Id. An "extreme" limitation will be found when an impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities" within a domain. 20 C.F.R. §416.926a(e)(3).[18] An extreme limitation is "more than marked," but "does not necessarily mean a total lack or loss of ability to function." Id. Day-to-day functioning is considered to be seriously limited regardless of whether the impairment limits only one activity within a domain, or several.

The ALJ concluded that Bobbie's impairment did not functionally equal a listed impairment:

> Based on the medical evidence of record and the testimony obtained at the hearing, the undersigned finds that claimant has no impairment of function in the areas of acquiring and using information, attending and completing tasks,

---

[17] Title 20 C.F.R. §416.926(e)(2)(i) states as follows:
**(2) Marked limitation.**
(i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

[18] Title 20 C.F.R. §416.926(e)(3)(i) states as follows:
**(3) Extreme limitation.**
(i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

interacting and relating with others, moving about and manipulating objects and caring for yourself. He has a less than marked impairment in the area of health and physical well being. Claimant does continue to suffer from glaucoma but it appears to be well controlled with his current treatment. He sees reasonably well with glasses and is able to participate in all activities. There is no evidence that this impairment has hindered claimant's development in academic or social settings.[19]

A review of the record shows that Bobbie's vision does not limit his physical activities. He plays with friends at school, he participates in physical education, and he helps with household chores. Further, Dr. Gordon explained that Bobbie's vision has improved to the point that he can manage to read without glasses, although he has to have the materials close to his eyes.[20] Moreover, Bobbie makes A's in special education classes. Although his mother testified that he was active and sometimes fought with other kids, there is no evidence that these behaviors were abnormal or otherwise impacted his ability to function. Thus, there is substantial evidence indicating that Bobbie does not have a marked impairment in attending and completing tasks, interacting and relating with others, moving about and manipulating objects, or caring for himself.

Since Bobbie's glaucoma requires doctors' visits and surgeries, it impacts his "health and physical well-being." In this domain, the Social Security Services Administration considers:

> [T]he cumulative physical effects of physical or mental impairments and their associated treatments or therapies on your functioning that we did not consider in paragraph (j) [moving about and manipulating objects] of this section.

20 C.F.R. § 416.926a(l).

---

[19] Tr. 18-19.

[20] Tr. 188.

Although Bobbie has had surgeries and surgical procedures will be required in the future, the surgeries are on an outpatient basis and there is no evidence that they significantly impact Bobbie's activities or abilities. Moreover, considering Bobbie's progress thus far, it appears that, since he is physically active without limitation, he has adjusted well to the limitations posed by his glaucoma and the required treatment. Accordingly, the undersigned concludes that substantial evidence supports the ALJ's conclusion that Bobbie does not have marked impairment in the domain of health and physical well-being.

As discussed above, an impairment functionally equals a listed impairment if it results in marked limitations in two domains or an extreme limitation in one domain. There is no evidence that Bobbie has a marked impairment in at least two areas, or an extreme limitation in one. Thus, the ALJ's conclusion that Bobbie's impairment does not functionally equal a listed impairment is supported by substantial evidence.[21]

---

[21] The undersigned notes that Melançon attached a July 7, 2005 operative report to her brief. The report states that Bobbie has congenital glaucoma of both eyes, he underwent an examination under anesthesia, and a "needling of bleb left eye." The Commissioner correctly points out that this report does not satisfy the requirements for new evidence to justify a remand. Under 42 U.S.C. § 405(g), a claimant seeking judicial review may submit new and material evidence supporting a request for remand. "[I]n order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding." Leggette v. Chater, 67 F. 3d 558 (5th Cir. 1995), citing, Bradley v. Bowen, 809 F.2d 1054. 1058 (5th Cir.1987) (per curiam). The new evidence must pertain to the contested time period and not merely concern a subsequently-acquired disability or the deterioration of a condition that was not previously disabling. Id. For such new evidence to be material, there must exist a reasonable possibility that it would have changed the outcome of the Secretary's determination. Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir.1981). Here, the evidence is similar to other procedures which Bobbie underwent and which were considered by the ALJ. Although this evidence shows that Bobbie continues with treatment, including surgery, the ALJ was aware of that future surgeries were likely. This evidence does not cast doubt on the ALJ's decision, nor is there a reasonable possibility that it would have changed the outcome of the decision.

Additionally, Melançon's reference to the fact that Bobbie has been placed on Ritalin does not constitute competent evidence of an impairment. More importantly, there were no medical records before the ALJ concerning Ritalin. Additionally, there is no evidence concerning the reason for the medication. Thus, the fact that Bobbie is on Ritalin is inconsequential for the purposes of the instant application and appeal. The undersigned notes, however, that depending on the reason for the medication, the underlying diagnosis, combined with Bobbie's glaucoma, may serve as the basis for a new application for benefits to be filed with DDS.

10

*Conclusion*

For the foregoing reasons, the undersigned concludes that the ALJ's decision is supported by substantial evidence, and recommends that the Commissioner's decision be AFFIRMED and the case be DISMISSED.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana on December 29, 2005.

COPY SENT
DATE 12-29-05
BY: CS
TO: mem
    RFD|ms

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, LA 70501
(337) 593-5140    FAX 593-5155